IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 3:14cr147-MHT |
| | ) | (WO) |
| ANTONIO DARSET KING, SR. | ) | |

OPINION AND ORDER

Defendant Antonio Darset King, Sr. is charged in a superseding indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); one count of knowingly and intentionally possessing, with the intent to distribute, cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1); and one count of knowingly possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

This cause comes before the court on King's motion to suppress evidence found in a search of his home pursuant to a warrant that King contends was invalid. The magistrate judge held a full evidentiary hearing on

King's suppression motion and then issued two recommendations that the motion be denied. After a thorough, independent, and de novo review of the record (including a review of the transcript of the evidentiary hearing), the court concludes that King's objections to the recommendations should be overruled, the recommendations should be adopted (albeit not for all the reasons given), and the suppression motion should be denied.

## I.

When reviewing a recommendation of a magistrate judge, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636.

II.

On February 19, 2014, the body of Sayquawn Wiggins was found in the grass by a church parking lot in Cottonwood, Alabama.  He had been shot to death.  After identifying the body, which at the time had no picture identification on it, police interviewed several of Wiggins's relatives.  The first interview took place at the local sheriff's office, where investigators asked to meet with a large group of family members.  At this initial family meeting, investigators interviewed Wiggins's mother, who said that King had threatened to kill both her and Wiggins on multiple occasions.  She had filed a police report in December 2013 alleging this.  In August 2013, Wiggins himself had filed a police report alleging that King had threatened to kill him.[1]

---

1.  In his objection to the magistrate judge's second recommendation, King states that these threats "allegedly occurred six (6) months prior to the murder," Objections (doc. no. 119), ¶ 27, but this is (continued...)

Also in the initial interview, another family member said that King wanted Wiggins dead because Wiggins had stolen 1.5 kilos of cocaine from King. This family member gave the name of another person whom the investigators interviewed and who corroborated the information about the drugs and that King had actually put out a formal hit on Wiggins. The family member also gave information on how to contact yet another person, a woman, who had been staying with Wiggins at a hotel. Investigators interviewed the woman, and she confirmed the story about the drugs and the hit. The woman told them that, the night before the murder, she, Wiggins, and another man named Montrell Davis,[2] had all spent the night in a hotel room. She said that, on the

_____

not supported by the record. Wiggins was murdered in mid-February 2014. While Wiggins himself filed a police report in August 2013, his mother's police report was filed in December 2013, about two months before the murder. Furthermore, King fails to mention the other individuals who corroborated that King threatened Wiggins. It appears from the record that the threats were repeated over an extended period of time.

2. Davis is Wiggins's uncle on the other side of the family from King.

date of the murder, Wiggins and Davis had driven her to a pharmacy.  Police pulled surveillance video from the hotel and confirmed that, on the day of the murder, Wiggins and Davis were riding together in a car shortly after 2:00 p.m.

After finding all this out, investigators interviewed Davis.  Davis is married to Wiggins's aunt on Wiggins's father's side of the family.  Davis first denied knowing anything about the incident.  Police then confronted him with inaccuracies in his timeline of events.  They also had his wife talk to him, and she encouraged him to tell them the story he had told her. Eventually, he told the investigators that he had been in a car with Wiggins when several cars pulled up to them at a traffic light and abducted the two of them. According to Davis, King was present with the abductors, and they eventually let Davis go, but not Wiggins.

The next day, police again interviewed Davis, and he told the same story about being abducted, but he

added that he had been at work when an unknown man approached him and handed him an envelope.  Inside were pictures of Davis's family and a telephone number. Davis says he called the number and King answered. Over the phone, King told Davis he would kill Davis and his family if he did not help King find Wiggins.  Davis said he agreed to help.[3]

Police estimated Wiggins's time of death to be shortly after 4:00 p.m. on February 19.  They obtained cell-phone records of King and Davis and found that the two had been travelling together around that time and had called each other on their phones that day.  The cell-phone records placed each of them within 1.5 miles of the scene of the crime.  In addition, as a condition for bond in another criminal case, King was wearing a

---

3. Davis would later admit to being the trigger man in Wiggins's murder.  When he confessed, Davis said that King had paid him about $ 1,000 to kill Wiggins and had invited Davis into his drug operation.  Davis even provided investigators with the AK-47 assault rifle he used.  This did not happen until April, however, about six weeks after the search warrant was executed, and, accordingly, was not a basis for the search warrant.

GPS ankle bracelet at the time.   The GPS monitor sent a GPS "ping" every 60 seconds and was accurate to within 20 feet, according to the monitoring service. The GPS monitor placed King at the end of a road that leads to the church where Wiggins's body was found. The GPS monitor does not indicate that King went onto church property--only that he went to the road leading to the church.   The crime scene is the church parking lot.   The church is the only building on this road, and there are no other buildings around.   It is a very rural area, and nothing else was within earshot, according to the investigator that testified at the hearing.

Investigators obtained and executed a search warrant from a state judge for King's house, but did not find any evidence of the murder there. They did, however, find evidence of the crimes with which he is charged in this federal case, namely, drugs and guns.

In this federal case, King moves to suppress all tangible evidence and statements obtained through use

of the search warrant. After a hearing, the federal magistrate judge issued a recommendation that the motion be denied, and, in response to King's objections to that recommendation, issued a second or supplemental recommendation. King filed objections to the second recommendation as well. The two recommendations and the objections to them are now before the court.

### III.

King contends that the affidavit submitted to the state judge failed, on its face, to provide sufficient probable cause for issuance of a warrant to search his home. This court disagrees.

Without question, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether probable cause exists for issuance of a search warrant, a judge should look to the "totality of the circumstances" and make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before

him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "[P]robable cause exists if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (citations omitted).

In reviewing the issuing judge's probable-cause determination, this reviewing court should, as a general matter, look only to the face of the affidavit accompanying a search-warrant application to determine whether probable cause was in fact lacking. See United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (looking only to the face of the affidavit when determining "whether the affidavit underlying the search warrant was 'so lacking in indicia of probable

cause as to render official belief in its existence entirely unreasonable.'") (quoting <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984)).

Here, the affidavit submitted by Lt. Harold Smith to the state judge in support of the search warrant for King's home provides ample probable cause. The affidavit, to the extent it provides evidence of King's involvement in Wiggins's murder, is as follows (with sentence numbering inserted for ease of discussion):

> "[1] During the investigation it was documented that Antonio Darset King AKA Bonnie made threats to kill the victim Sayquawn Wiggins on several occasions because Wiggins stole a large quantity of cocaine from King, who is his uncle. [2] A statement was taken from Santago Montrell Davis on 2/22/14 at the Russell County Sheriff's Office. [3] Davis advised that King made threats to him that he would kill Davis' family if he did not assist in locating Sayquawn Wiggins. [4] Davis agreed to assist King in locating Wiggins. [5] On February 19, 2014 at about 1600 hrs, which is the approximate death of Sayquawn Wiggins, cell phone and ankle monitor GPS records place Antonio King and Santago Montrell Davis within 1.5 miles of the crime scene. [6] After leaving the area of the crime scene ankle monitor

10

> GPS records show Antonio King drove
> directly to his residence at 8 Forrest
> Ridge Lane, Russell County, Phenix
> City, AL."

Recommendation (doc. no. 84) at 6-7. The excerpted affidavit provides sworn testimony from a witness that King had made threats to kill the witness if the witness did not help him in locating Wiggins, that the witness agreed to assist King in locating Wiggins, and that, on the date and at approximate time of Wiggins's death, King and the witness were within a mile and a half of the scene of Wiggins's death, and that, after Wiggins's death, King returned to his home. The information in the affidavit would warrant a person of reasonable caution to believe that a crime had been committed and that evidence was at the place to be searched.

## IV.

King correctly points out that the Supreme Court answered 'yes' to the question, "Does a defendant ... ever have the right ... to challenge the truthfulness

11

of factual statements made in an affidavit supporting a warrant?"   <u>Franks v. Delaware</u>, 438 U.S. 154, 155 (1978).    As the Court observed, "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning."   <u>Id</u>. at 168.    "The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause."   <u>Id</u>.

The law is well-established "that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."   <u>Id</u>. at 155-156. And, "[i]n the event that at that hearing the allegation of perjury or reckless disregard is

established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." <u>Id</u>.

King argues that affiant Lt. Smith recklessly relied upon false statements by Davis and omitted details that called into question Davis's reliability. In his first recommendation, the magistrate judge rejected King's argument with the findings that, "even without inclusion of any of Davis' statements within the affidavit in support of the search warrant, probable cause exists for the issuance of a search warrant to search King's residence." Recommendation (doc. no. 84) at 14.  The court disagrees with this part of the magistrate judge's conclusion.

The magistrate judge removed the second, third, and fourth sentences from the excerpted affidavit and

examined the remaining first, fifth, and sixth sentences, which are as follows (with sentence numbering inserted for ease of discussion):

> "[1] During the investigation it was documented that Antonio Darset King AKA Bonnie made threats to kill the victim Sayquawn Wiggins on several occasions because Wiggins stole a large quantity of cocaine from King, who is his uncle. ... [5] On February 19, 2014 at about 1600 hrs, which is the approximate death of Sayquawn Wiggins, cell phone and ankle monitor GPS records place Antonio King and Santago Montrell Davis within 1.5 miles of the crime scene. [6] After leaving the area of the crime scene ankle monitor GPS records show Antonio King drove directly to his residence at 8 Forrest Ridge Lane, Russell County, Phenix City, AL."

Recommendation (doc. no. 84) at 12.

First, this court is unsure that the magistrate omitted enough sentences. Viewed in context, the first, or introductory, sentence could be construed as referring to Davis's statements. It states that, "During the investigation it was documented that Antonio Darset King AKA Bonnie made threats to kill the victim Sayquawn Wiggins on several occasions ...."

**14**

Then, the next two omitted sentences are the following: "A statement was taken from Santago Montrell Davis on 2/22/14 at the Russell County Sheriff's Office. Davis advised that King made threats to him that he would kill Davis' family if he did not assist in locating Sayquawn Wiggins." Viewing only the affidavit and having no outside context, the court believes that a reasonable interpretation of the three sentences is that the statements from Davis were the documentation alluded to in the first sentence.

Nonetheless, even if the court retains the first sentence and only the three sentences clearly referring to Davis's statements are excluded, as the magistrate did, the court still does not believe that the affidavit, on its face alone, was sufficient to support a warrant. In that case, this court is left with the following items of evidence linking King to the crime:

(1) An unspecified number of unnamed, uncorroborated declarants' hearsay statement that King threatened to kill Wiggins on

15

multiple occasions because Wiggins had stolen a
large amount of cocaine from King, who is his
uncle.

(2) At the approximate time of Wiggins's death,
cell-phone and ankle monitor records placed
King within 1.5 miles of the crime scene.

(3) After leaving the area 1.5 miles from the crime
scene, King drove directly to his home.

The first item does not support probable cause because
it contains only anonymous hearsay statements without
any indication of the reliability of the declarants or
their allegations.   See Illinois v. Gates, 462 U.S.
213, 227, 239 (1983) (stating that an anonymous letter
alleging criminal activity, without some indication of
the reliability of the letter's allegations, would be
insufficient to support probable cause, and that "An
officer's statement that affiants have received
reliable information from a credible person and believe
that heroin is stored in a home, is likewise
inadequate.") (quotation marks and citations omitted).

Thus, after removing the objected-to language, the only sufficiently reliable evidence linking King to the crime was that he was within 1.5 miles of the crime scene at the time of his death and that he drove directly home from there.   Merely being within 1.5 miles of a crime scene, without something more (for example, more elaboration in the warrant or when what would be apparent from the context would be sufficient to provide probable cause), is not a sufficient basis to search one's home.   This evidence is insufficient to support probable cause.[4]

     To be sure, investigators had at their disposal substantial evidence of the alleged threats.   Within

_____

     4. The magistrate judge asserts in his second recommendation that, "even if the allegations of threats were made by a mere tip from an unidentified informant, if joined with the definitive proof that King was in close proximity to the crime scene, probably (sic) cause still exists."   Recommendation (doc. no. 118) at 8 n. 2.   The court disagrees. As stated, merely being within 1.5 miles of a crime scene, without more elaboration, is not sufficient, and the first sentence's anonymous statement, for which there is no indication of reliability, does not provide the needed elaboration.

six months prior to the murder, there were two police
reports filed--one by Wiggins himself--alleging that
King had threatened to kill Wiggins and his family.
The Wiggins report stated that "King had put a gun to
his head and threatened to kill him and his family."
Suppression Hearing Transcript (doc. no. 83), at 26.
During the murder investigation, no fewer than three
people--not including Davis--stated that King had
threatened to kill Wiggins.     Indeed, during the
hearing, Lt. Smith stated these were in fact the
"several occasions" to which he was referring in the
affidavit. However, none of this information, which in
even a summary fashion would clearly have indicated the
reliable basis for the "threats to kill ... Wiggins"
statement in the first sentence, is contained in the
affidavit.


                              V.

     Nevertheless, while the court does not agree with
the  magistrate  judge's  conclusion  in  his  first

recommendation that the Davis statements were not necessary for a finding of probable cause on the basis of the affidavit, the court agrees with the magistrate judge in his second recommendation that suppression of evidence is not warranted because King has failed to make a substantial showing that Lt. Smith intentionally or recklessly disregarded the truth when he included some of Davis's statements in the affidavit.

As stated, a defendant may attack a search warrant by making a substantial preliminary showing that the underlying affidavit included a false statement that was made either knowingly and intentionally or with reckless disregard for the truth. <u>Franks</u>, 438 U.S. at 171.

It must be remembered that the pertinent inquiry is not whether Davis was lying, but rather whether Lt. Smith intentionally or recklessly misled the issuing judge with his affidavit. <u>See</u> <u>Franks</u>, 438 U.S. at 165 (noting that every statement in a search warrant affidavit need not be "'truthful' in the sense that

every fact recited in the warrant affidavit is
necessarily correct .... But surely it is to be
'truthful' in the sense that the information put forth
is believed or appropriately accepted by the affiant as
true.").

The evidence Lt. Smith had at the time supporting
the truthfulness of what he said in the affidavit about
what Davis had said is simply overwhelming.  No fewer
than five different sources corroborated that King had
threatened to kill Wiggins because Wiggins had stolen a
large amount of cocaine from King.  In fact, two police
reports were filed alleging that King had threatened to
kill Wiggins, one of which was filed by the victim
himself.  There was thus a documented history, going
back months, of King's threats to kill Wiggins, for a
reason that common sense says could cause someone to
threaten to kill.  With this background, Davis's
statements that King threatened to kill Davis and his
family if he did not help find Wiggins seems
considerably more plausible than it otherwise would be.

To that, add that Davis stated that he had agreed to help King find Wiggins; that another witness had told Lt. Smith that she, Wiggins, and Davis had all spent the night in the same hotel room the night before Wiggins's death; that surveillance video from the hotel shows Wiggins and Davis leaving in a car about four hours before the murder; and that cell-phone data establish that Davis and King were within 1.5 miles of the crime scene at the time of the murder. Lt. Smith's interpretation of Davis's statements to him was not only a reasonable one, it was the only reasonable one.

Moreover, the magistrate judge heard testimony from Lt. Smith and expressly found that he did not recklessly or intentionally lie.   In his second recommendation, the magistrate judge stated: "The [magistrate judge] credits the testimony of Lt. Smith. Lt. Smith testified that based upon his experience, when suspects are brought in for questioning 'they never initially tell the truth.'   Lt. Smith further testified that in all his years in law enforcement, he

has never had a single suspect who '[told] the truth initially, just come out and say it.'   The facts Lt. Smith used in his affidavit are those from the most recent statement made by Davis at that time.   Lt. Smith said that he did not find it necessary to bring every version of Davis' statement before the judge because he provided the statement that he believed to be true at that time."  Recommendation (doc. no. 118) at 6.   The court not only finds no basis to reject the magistrate judge's expressed factual findings, the court, after reviewing the record, fully agrees with them.

Finally, King charges Lt. Smith with "cherry picking" the evidence.  Motion to Suppress (doc. no. 73) at 7.   King argues that "the search warrant affidavit authored by Lt. Smith ... contained material and reckless misstatements and omissions concerning information about Davis which would be highly relevant to a judicial officer's decision concerning probable cause based largely on claims made by that source."

<u>Id</u>.   King maintains that Davis changed his story once and then added to the second version piecemeal.

To be sure, every affiant must decide what evidence to present to the judge in support of a warrant. Picking and choosing, either consciously or unconsciously or both, comes with the task of culling and presenting evidence. Even the writer of a comprehensive biography must pick and choose. Therefore, the question is not whether the affiant picked and chose evidence, for that is inherent to the task, but rather whether, in doing so, the affiant intentionally or recklessly misled the judge being asked to issue the search warrant. See <u>Franks</u>, 438 U.S. at 155. Here, the evidence, as already shown, does not support the latter conclusion.

## VI.

In his second recommendation, the magistrate judge also concluded that the <u>Leon</u> "good faith exception"

warrants denying King's motion to suppress. In <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984), the Supreme Court held "that courts generally should not render inadmissible evidence obtained by police officers acting in reasonable reliance upon a search warrant that is ultimately found to be unsupported by probable cause." <u>United States v. Martin</u>, 297 F.3d 1308, 1313 (11th Cir. 2002). The magistrate judge concluded that, under this exception, even if the affidavit, on its face, did not support the issuance of the search warrant for King's home, the resulting evidence should still not be suppressed. The court agrees.

King, however, points out that there are four limited sets of circumstances in which the <u>Leon</u> good-faith exception will not apply. <u>Leon</u>, 468 U.S. at 923. They are the following: "(1) where 'the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth'; (2) 'where the issuing magistrate wholly

**24**

abandoned his judicial role ...'; (3) where the affidavit supporting the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and (4) where, depending upon the circumstances of the particular case, a warrant is 'so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid.'"   <u>Martin</u>, 297 F.3d at 1313 (citations omitted).

In his motion to suppress, King appears to argue that only two of the limitations should apply here: where the affiant misled the issuing judge with false information; and where reliance on the affidavit would be entirely unreasonable.

As noted above, the court is not convinced that Lt. Smith included information in the affidavit that he "knew was false or would have known was false except for his reckless disregard for the truth."   <u>Id</u>. (quoting <u>Leon</u>, 468 U.S. at 923).   Nor, as also

explained above, is the face of "the affidavit supporting the warrant ... so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Id. (quoting Leon, 468 U.S. at 923).

\*\*\*

Accordingly, for the above reasons, it is ORDERED as follows:

(1) Defendant Antonio Darset King, Sr.'s objections (doc. nos. 85 & 119) are overruled.

(2) The recommendations of the magistrate judge (doc. nos. 84 & 118) are adopted, albeit not all of the reasoning.

(3) Defendant King's motion to suppress (doc. no. 23), as amended (doc. no. 73), is denied.

DONE, this the 31st day of July, 2015.

      /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE