UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

UNITED STATES OF AMERICA

vs.  Case No. 3:14-cr-147-JDW-TFM

ANTONIO DARSET KING, SR.

_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the Magistrate Judge (Dkt. 235) recommending that Defendant's Motion for Reconsideration (Dkt. 192), Motion for Second Suppression Hearing (Dkt. 193), and Amended Motion for Evidentiary Hearing (Dkt. 217) be denied. Defendant has objected to the Report and Recommendation (Dkt. 244), and the Government has responded (Dkt. 245). This Court has conducted a *de novo* review, including the transcript of the evidentiary hearing conducted by the Magistrate Judge. Upon consideration, Defendant's objections are overruled. The Report and Recommendation (Dkt. 235) is adopted and approved, as supplemented herein. Defendant's Motion for Reconsideration (Dkt. 192) is **DENIED**. Defendant's Motion to Continue (Doc. 230) and Ex parte application in forma pauperis for subpoenas (Doc. 224) are **DENIED** *as moot*.

The Fourth Amendment is violated when a search warrant affidavit contains "deliberate falsity or reckless disregard" for the truth. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997), *citing Franks*, 438 U.S. at 171. Likewise, intentional omissions and omission made with reckless disregard for the accuracy of the affidavit violate the Fourth Amendment. *Id.* Material

omissions are treated essentially the same as material misrepresentations. *U.S. v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980).

## Procedural history

To the extent Defendant seeks a rehearing of his original motion to suppress, he was afforded an opportunity to present new evidence in support of his motion, but failed to present any. Nor did he make a showing that reconsideration was appropriate. Nonetheless, a brief history is appropriate. According to the testimony presented during the two evidentiary hearings conducted by the Magistrate Judge, law enforcement began investigating the homicide of Sayquawn Wiggins after his body was found with multiple gunshot wounds. Santago Montrell Davis and Defendant became suspects. Davis was initially interviewed on February 21, 2014 by Lt. Harold Smith. The interview was videotaped. A follow-up interview was conducted on February 22, 2014, and also videotaped. During both interviews, Davis told Smith that Defendant had threatened he and his family. Late that evening, Davis was arrested and transported to the Russell County Jail, according to the police reports of B. Hopkins, attached to Defendant's motion.

Early on February 23, 2014, Lt. Smith presented an Application and Affidavit for Search Warrant to Circuit Judge Albert Johnson, requesting a search warrant to execute on the residence of Defendant, Antonio King, at 8 Forrest Ridge Court, Phenix City, Alabama.[1] Judge Johnson issued the search warrant and on February 23, 2014, the warrant was executed and a firearm was seized, resulting in Defendant being charged with being a felon in possession.

Through counsel, Defendant filed a motion to suppress under *Franks v. Delaware*.[2] He contended that the statements attributed to Santago Montrell Davis by Lt. Smith in his search warrant

---

[1] The testimony established that Judge Johnson corrected the reference to "Forrest Ridge *Lane*" and initialed the insertion of "Court" in lieu of Lane on the warrant. (October 30th hearing, p. 25).

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).

affidavit were not credible, that Smith recklessly omitted inconsistent statements of Davis, that Smith mislead Judge Johnson by attributing a statement to Davis that he had been threatened by Defendant if he did not assist Defendant in locating Sayquawn Wiggins, and therefore probable cause did not exists for the search warrant (Dkt. 23).

After conducting an evidentiary hearing, the Magistrate Judge recommended that the motion be denied. Judge Thompson, after conducting a *de novo* review, agreed, although for different reasons (Dkts. 84, 118). He found that without the reference to Davis' statements, the affidavit was not sufficient to support probable cause. Notwithstanding, he agreed with the Magistrate Judge and found that suppression of the evidence was not warranted because Defendant had not made a "substantial showing that Lt. Smith intentionally or recklessly disregarded the truth when he included some of Davis' statements in the affidavit." And he found that the evidence available to Lt. Smith "supporting the truthfulness of what he said in the affidavit about what Davis had said is simply overwhelming," and that "[n]o fewer than five different sources corroborated that King had threatened to kill Wiggins because Wiggins had stolen a large amount of cocaine from King."

Judge Thompson recounted Lt. Smith's testimony, noting that the Magistrate Judge found that Smith was credible and "did not recklessly or intentionally lie." And finally, he agreed with the Magistrate Judge that the *Leon* "good faith exception" warranted the denial of Defendant's motion to suppress, and agreed with the Magistrate Judge that, "even if the affidavit, on its face, did not support the issuance of the search warrant for King's home, the resulting evidence should still not be suppressed."

After counsel was discharged, Defendant filed a *pro se* Motion for Evidentiary Hearing (Dkt. 193) and an Amended Motion for Evidentiary Hearing (Dkt. 217), contending that "new evidence has been revealed concerning Santago Montrell Davis alleged statement that was used in Lt. Smith

[sic] affidavit to substantiate probable cause to obtain the search warrant used in this matter" (Dkt. 193, p. 3).[3] The essence of Defendant's "new" evidence was his contention that Davis was actually in the Russell County Jail on February 21st and therefore Lt. Smith could not have taken his statement when he said he did. In his objections, he explains that he is "challenging the fact that Davis was not even at the Sheriff's Department at the time Lt. Smith states that he was there giving statements," and that the "Hopkins report places Mr. Davis at the county jail at the time the portion of Davis [sic] statement thats [sic] used in the affidavit was even given." (Dkt. 244, p. 16, 20).

In his motion, Defendant acknowledges that Lt. Smith averred in his affidavit that he took Davis' statement on February 22, 2014. He contends, however, that Smith testified during the October 30th evidentiary hearing that he interviewed Davis on February 21st, during which Davis related the threat Defendant allegedly made. (*see* p. 22, October 30th hearing). Defendant references a February 22, 2014 police and arrest report, which indicates that Davis was arrested and charged with capital murder and transported to the jail at 23:30 hours that day. Defendant concludes, therefore, that Davis could not have been interviewed by Lt. Smith as he averred, since Davis had been transported to the jail. (*Id.* at p. 7 ) ("Hopkins [sic] report place [sic] Davis to the county jail before the alleged statement was given"). And from this, Defendant surmises that Lt. Smith "committed perjury at the suppression [hearing] held October 30, 2014," and "included information in the affidavit that he knew was false to mislead the judge in making his determination." (*Id.* at p.7 - 9). Defendant is mistaken.

Upon consideration, I find, as Judge Thompson did, that Defendant has not made a substantial preliminary showing that a false statement was knowingly and intentionally made in

---

[3] Defendant also included bold, fanciful and unsubstantiated allegations of corruption by his former attorney, alteration of documents and recordings, including "falsifying video footage of Davis's interview" and "remaking and back dating" of the interview recordings (Dkt. 217, p. 4 - 5).

Smith's affidavit. Nor has Defendant shown that Smith made a statement with reckless disregard for the truth. One thing is certain, as Judge Thompson found, that the statement attributed to Davis by Lt. Smith in his affidavit about Defendant threatening Davis's family if he did not assist in locating Wiggins, was material to probable cause.

Consistent with his prior testimony during the October 30th hearing, Lt. Smith confirmed during the February 17th hearing that he initially interviewed Davis on February 21st, put Davis up at the Courtyard Marriott that night for safety reasons, and continued the interview on the 22nd, during which Davis related the specific threat Smith included in his affidavit. That evening, Davis was arrested and charged with murdering Wiggins, then booked into the jail early on the 23rd. And Smith testified that the entire interview was audio and video taped.[4]

Notwithstanding Smith's testimony and the police reports which documented the timeline of events, Defendant contends, without any supporting facts or documentation, that the information Smith included in his affidavit "didn't allegedly come until the 23rd. Nothing was said before then about any threats that I made." . . . The statement that they used didn't allegedly come until the 23rd." The undisputed facts and the record belie this contention, and support my determination that he failed to make even a substantial preliminary showing that Lt. Smith's affidavit included a false statement of material fact, or one made with disregard for the truth

In sum, Defendant has not made a showing that Lt. Smith made a false statement in his affidavit. And contrary to Defendant's argument, the Magistrate Judge appropriately exercised his

---

[4] Defendant takes issue with Smith's October 30th testimony that Davis was initially interviewed on February 21st and then put him up at the Courtyard Marriott with his wife that night. (p. 47, October 30th transcript). According to Defendant, he has witnesses who observed Davis at the jail on February 21st. From this, he concludes that Smith lied about having interviewed Davis on the 21st. Notwithstanding, Lt. Smith's testimony and the police reports clarify, corroborate and confirm the facts in his affidavit. The perceived factual inconsistencies Defendant suggests between Smith's testimony and the police reports were plausibly explained by Lt. Smith, and the police reports corroborate the time line of events Smith describes. Defendant made no showing that those reports were falsified or altered.

-6-

discretion to control the proceedings by requiring Defendant to proffer the proposed testimony to determine relevance and restricting Defendant to the presentation of only new evidence which was relevant to whether Lt. Smith's affidavit was truthful, since a full and fair hearing on Defendant's original motion to suppress had been conducted. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002).

**DONE AND ORDERED** in chambers this 11th day of March 2016.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Defendant, pro se
          Counsel of Record